UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 1 6 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 04-04(RWR) |
| | ) | |
| CANDICE POLLARD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Candice Pollard filed a motion under 28 U.S.C. § 2255 to vacate her sentence arguing that her counsel provided ineffective assistance by failing to review her plea agreement, explain the import to her of United States v. Booker, 543 U.S. 220 (2005), prepare for hearings, and advise her of the status of her case, and that the government's failure to file a motion to reduce her sentence was prosecutorial misconduct. The government opposes Pollard's motion. Because Pollard's claims of ineffective assistance of counsel and prosecutorial misconduct are unsubstantiated, her motion will be denied.

### BACKGROUND

Pollard was indicted for unlawful possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). Pollard later entered

-2-

into a plea agreement and pled guilty to both counts of a
superceding information charging her with using, carrying, and
possessing a firearm during a drug trafficking offense, in
violation of 18 U.S.C. § 924(c)(1), and perjury, in violation of
D.C. Code § 22-2402(a)(1).  (Plea Tr. at 17, 62.)

     The facts to which Pollard agreed under oath (id. at 15)
include the following.  Pollard testified under oath before a
grand jury that was investigating a double murder.  In response
to the prosecutor's questions, Pollard testified falsely that she
was not at the scene and did not see the shootings, and that the
shooter did not get in a car with her after the shootings
occurred.  (Id. at 48-54.)  A month later, police executed a
search warrant at a residence, encountered Pollard in the
building's doorway holding a digital scale with white powder
residue, and arrested her.  They searched Pollard and recovered
from her a loaded Bauer .25 caliber handgun and 2.2 grams of
crack cocaine held in twelve zip-lock bags and two other pieces
of plastic.  With Pollard's consent, the police also searched her
car and recovered 400 empty zip-lock bags, a razor blade with
white residue, $111 in U.S. currency, and court documents bearing
Pollard's name.  (Id. at 45-47.)

     In the plea agreement reached under Federal Rule of Criminal
Procedure 11(c)(1)(C), the parties agreed upon a 144-month
sentence.  Pollard was classified as a career offender under the

-3-

U.S. Sentencing Guidelines Manual ("USSG") because she had two prior felony convictions for controlled substance offenses, and her recommended sentencing range was 262 to 327 months. (Presentence Investigation Report ("PSR") ¶¶ 31, 53.)  Pollard's plea agreement and the recommended sentence were accepted, and she was sentenced to 144 months.  (Sentencing Tr. at 6.)  Pollard claims that (1) her attorney, Peter Mann, was ineffective because he failed to advise her that the plea agreement locked her into a sentence when instead she could have sought an agreement leaving her open to seek a downward departure under Booker, he did not review her plea agreement, he did not advise her on the status of the case, and he was not prepared for hearings, and (2) the government engaged in prosecutorial misconduct by not filing a motion under Rule 35 to reduce her sentence despite her initial cooperation in the double murder investigation.  (Def.'s Mot. at 5, 6, 8.)  The government opposes Pollard's motion.

<u>DISCUSSION</u>

A sentenced defendant can move under § 2255 to "vacate, set aside, or correct the sentence" if the sentence was "imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255.  The defendant bears the burden of proving the violation by a preponderance of the evidence.  <u>United States v. Vines</u>, Criminal Action No. 01-399 (CKK), 2006 WL 1876951, at *3 (D.D.C. July 6, 2006).  An evidentiary hearing does not need to

-4-

be held when the "'motion and the files and the records of the
case conclusively show the prisoner is entitled to no relief.'"
United States v. Horne, No. 99-3080, 2000 WL 60246, at *2 (D.C.
Cir. Jan. 4, 2000) (noting that it is within the court's
discretion whether to hold a hearing when it is the same court
that presided over the defendant's criminal proceedings) (quoting
28 U.S.C. § 2255).

I.   INEFFECTIVE ASSISTANCE OF COUNSEL

A claim of ineffectiveness of counsel "'arising out of the
plea process' must be evaluated under the Strickland [v.
Washington, 466 U.S. 668 (1984)] test." Best v. Drew, Criminal
Action No. 01-262 (RWR), 2006 WL 2035652, at *5 (D.D.C. July 18,
2006) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)).  In
order to prove ineffective assistance of her counsel, Pollard
must show (1) that counsel's representation fell below an
objective standard of reasonableness, and (2) that there is a
reasonable probability that, but for counsel's errors, the result
of the proceeding would have been different. Strickland, 466
U.S. at 687-88, 694. "A plea based upon [the] advice of counsel
that 'falls below the level of reasonable competence such that
the defendant does not receive effective assistance[]' is neither
voluntary nor intelligent." United States v. McCoy, 215 F.3d
102, 107 (D.C. Cir. 2000) (quoting United States v. Loughery, 908
F.2d 1014, 1019 (D.C. Cir. 1990) (internal citation omitted)).

-5-

However, a defendant's affirmations at a plea hearing of the "adequacy of counsel and the knowing and voluntary nature of [her] plea . . . may 'constitute a formidable barrier' to . . . later refutations." United States v. Taylor, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal citations omitted) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Counsel's performance is evaluated from counsel's perspective at the time, without the benefit of hindsight. Strickland, 466 U.S. at 689.

For the first Strickland prong, the movant must show that counsel did not provide reasonable service under the "prevailing professional norms" given the circumstances. Id. at 688. Courts look to "an attorney's ethical duties, including those which require counsel to bring skill and knowledge to the case and to provide zealous representation." Best, 2006 WL 2035652, at *3. For the second prong, a reasonable probability is "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also United States v. Bowie, 198 F.3d 905, 908-09 (D.C. Cir. 1999) (noting that reasonable probability can be less than 50.01%). When the evidence supports a defendant's assertion that but for counsel's erroneous advice, he would have gone to trial and not pled guilty, a defendant has been prejudiced. See United States v. Streater, 70 F.3d 1314, 1322 (D.C. Cir. 1995) (stating that the defendant's affidavit asserting his innocence and intention to argue a defense and his

-6-

rejection of plea offers until after counsel erred and the judge
sent for a jury panel support an intent to proceed to trial).  To
satisfy such a showing of prejudice, a "defendant must make more
than a bare allegation that he 'would have pleaded differently
and gone to trial[.]'"  United States v. Horne, 987 F.2d 833, 836
(D.C. Cir. 1993) (quoting Key v. United States, 806 F.2d 133, 139
(7th Cir. 1986)).  See also United States v. Tolson, 372 F. Supp.
2d 1, 19 (D.D.C. 2005) (stating that the Strickland test requires
not "some" probability, but "reasonable" probability, a threshold
that bare allegations fail to satisfy).  Such a prejudice
determination is "closely related to the objective prediction of
whether the defense could succeed if the case went to trial."
United States v. Del Rosario, 902 F.2d 55, 58 (D.C. Cir. 1990)
(noting that whether there is a colorable claim of innocence is
relevant to the determination of a motion to vacate a plea due to
ineffective assistance of counsel).

     Pollard argues that Mann was ineffective for not reviewing
the plea agreement, advising her on the status of her case,
preparing for hearings, and explaining the effect of Booker so
that she could have requested a downward departure.  (Def.'s Mot.
at 5-6.)  During the plea, Pollard acknowledged that she had read
and understood the plea agreement and discussed its terms with
Mann.  (Plea. Tr. at 18, 32.)  Pollard does not argue that the
plea colloquy itself was unconstitutional, and an examination of

-7-

the transcript reveals that Pollard's guilty plea was "attended
by all the required procedural safeguards [of Rule 11]."  United
States v. Cray, 47 F.3d 1203, 1208 (D.C. Cir. 1995).  Pollard
agreed that the factual proffer read in court was a "true and
accurate" description of the events that occurred, agreed that
she had sufficient time to speak with her attorney and was
satisfied with his services, declined an opportunity to ask any
additional questions or speak with her lawyer before entering a
plea, stated that the signature on the plea agreement --
attesting that she had read and understood the plea agreement and
had discussed it with her attorney -- was indeed her signature,
and proceeded to voluntarily admit guilt.  (Plea Tr. at 18, 31-
33, 36, 54, 61-62.)  Pollard acknowledged that the court was not
bound to accept the plea agreement or the recommended sentence.
(Id. at 37, 60.)  She understood that if the court rejected the
plea agreement and she did not withdraw her plea, the court would
make the final determination of her guideline range, that the
sentence imposed could be "higher than . . . the estimate that
[her] attorney or the government ha[d] made so far[,]" and that
the sentence could be "more severe or less severe than the
sentence called for by the guidelines."  (Id. at 40-41.)
Furthermore, Mann signed an acknowledgment in the plea agreement
that he "read each of the pages constituting this plea agreement,
reviewed them with [his] client, and discussed the provisions of

-8-

the agreement with [his] client, fully." (Plea Agreement at 5.)
Pollard provides no details on how Mann purportedly failed to
review the plea agreement, to advise her on the case's status, to
prepare for hearings, or to explain Booker's effect.  A
defendant's "generalized and conclusory assertion" alleging
ineffectiveness with no mention of a specific act or omission
does not overcome the strong presumption that counsel's
performance was reasonable.  United States v. Poston, 902 F.2d
90, 98 (D.C. Cir. 1990); United States v. Geraldo, 523 F. Supp.
2d 14, 22 (D.D.C. 2007) (noting that where a defendant alleges
that counsel failed to inform him of the relevant facts regarding
his plea agreement, but "does not identify what 'relevant facts'
he was missing[,] . . . [s]uch conclusory arguments may be
summarily dismissed by the Court").

   Even if Mann was deficient, Pollard would still have to show
that she was prejudiced.  Pollard neither affirmatively alleges
nor demonstrates that but for Mann's errors, she would have gone
to trial.  She merely implies that she would have entered into a
plea agreement to these charges without an agreed-upon sentence,
and moved for a departure downward from the recommended
sentencing guidelines range.  Her assertion depends upon two
faulty premises.  The first is an assumption that the government
would have agreed to enter into such a plea agreement with her.
She has made no showing of that.  The second is that she would

-9-

have received a more lenient sentence under such an agreement. She has made no showing of that either, nor does the record reflect any such reasonable probability.

Pollard would fare no better if she had alleged that she would have gone to trial but for Mann's perceived deficiencies. To measure the reasonable probability that Pollard would have proceeded to trial, all counts that she would have faced must be considered and not just the counts to which she pled guilty. In re Sealed Case, 488 F.3d 1011, 1017 (D.C. Cir. 2007) (stating that absent a plea agreement, the government would have no reason not to prosecute all the counts in the indictment). Here, just considering the charges in the original indictment, Pollard faced formidable damning evidence and an extremely long period of incarceration if she were convicted. She was arrested allegedly with 2.2 grams of crack cocaine, a loaded Bauer .25 caliber handgun, and a digital scale with white residue found on her person, and 400 empty zip-lock bags, $111 in U.S. currency, court documents bearing Pollard's name, and a razor blade with white residue found in her car.[1] If she had gone to trial and were convicted, for example, of using, carrying, or possessing a

---

[1] Pollard did move to suppress this physical evidence, arguing that the search of her person was unlawful, she was not holding any digital scale, and she did not consent to a search of her car. While suppression was possible, if instead the evidence were admitted, the possibility of conviction would have been substantial.

-10-

firearm during a drug trafficking offense, Pollard, a career
offender under the guidelines, would likely have lost the three-
point offense level reduction she was awarded under USSG § 3E1.1
for acceptance of responsibility, exposing her to a guideline
sentencing range of at least 360 months to life.  USSG
§ 4B1.1(c)(3) (2004).  If Pollard were convicted instead of the
unlawful possession with intent to distribute charge, as a career
offender, she would have had an offense level of 34[2] and a
criminal history score of VI, still exposing her to a guideline
sentence of 262 to 327 months.  The recommended guideline range
sentences for either of these counts is substantially higher than
the 144 months she received under her plea agreement.[3]  These
assessments do not even take into account her exposure to
consecutive terms of imprisonment if she were convicted of the

_____

[2] Since the potential statutory maximum under 21 U.S.C.
§ 841(b)(1)(C) is 30 years for a defendant who has a prior
conviction for a felony drug offense, Pollard's offense level
would be 34.  See USSG § 4B1.1(b)(B).

[3] The one chance Pollard may have had -- and she has not
shown it to be a likely one -- to receive a lower guideline range
would have been if she were convicted of the § 922(g) charge
only.  Then, her guideline sentence range would be lower than the
guideline range for a conviction under § 924(c) or §§ 841(a)(1),
(b)(1)(C) because she would not be a career offender.  See USSG
§§ 4B1.1, 4B1.2 n.1 (2004) (stating that the career offender
provision only applies when "the instant offense of conviction is
a felony that is either a crime of violence or a controlled
substance offense" and that a "'crime of violence' does not
include the offense of unlawful possession of a firearm by a
felon, unless the possession was of a firearm described in 26
U.S.C. § 5845(a)").

-11-

pending D.C. Code offenses that were dismissed under the plea
agreement, namely, two counts of perjury, one count of
obstruction of justice, and two counts of accessory after the
fact to first degree murder.  (Gov't Opp'n at 2-3, 10 n.2.)[4]  The
potentially longer sentence and strength of the evidence weigh
against any reasonable probability that but for Mann's alleged
errors, Pollard would not have accepted a plea and proceeded to
trial.  Pollard has not made out a claim of ineffective
assistance of counsel.

II.  RULE 35(b) MOTION

     Pollard alleges that the government's failure to file a
motion under Rule 35 constitutes prosecutorial misconduct.  Under
Rule 35(b), "[u]pon the government's motion made within one year
of sentencing, the court may reduce a sentence if the defendant,
after sentencing, provided substantial assistance in
investigating or prosecuting another person."  Fed. R. Crim. P.
35(b)(1).  Upon the government's motion more than one year after
sentencing,

          the court may reduce a sentence if the defendant's
          substantial assistance involved: (A) information not
          known to the defendant until one year or more after

_____

     [4] Perjury, obstruction of justice, and accessory to first
degree murder are punishable by prison terms of up to ten,
thirty, and twenty years per count, respectively.  D.C. Code
§§ 22-2402(b), 22-722(b), 22-1806; see Jones v. United States,
716 A.2d 160, 166 (D.C. 1998) (confirming that accessory after
the fact to first degree murder is punishable up to twenty
years).

-12-

> sentencing; (B) information provided by the defendant
> to the government within one year of sentencing, but
> which did not become useful to the government until
> more than one year after sentencing; or (C) information
> the usefulness of which could not reasonably have been
> anticipated by the defendant until more than one year
> after sentencing and which was promptly provided to the
> government after its usefulness was reasonably apparent
> to the defendant.

Fed. R. Crim. P. 35(b)(2).  A court may not reduce a sentence

for substantial assistance under Rule 35(b) without a motion by

the government, as the government is due considerable deference

in assessing whether there has been the requisite substantial

assistance in a criminal investigation or prosecution.  In re

Sealed Case No. 97-3112, 181 F.3d 128, 133-34 (D.C. Cir. 1999).

Pollard claims that a Rule 35 motion should have been

"considered" in her case, that her "perjury charge . . . led

. . . the Prosecutor to be prejudiced in dealing with [her]

case[,]" and that a Rule 35 motion was denied after she

cooperated.  (Def.'s Mot. at 8.)  The facts here, however, reveal

no entitlement for her to be considered for a Rule 35 motion.

Under the plea agreement, the government was not obligated to

file a Rule 35 motion.  The plea agreement stated that "[Pollard]

acknowledges that the Government is not obligated and does not

intend to file any downward departure sentencing motion under

Section 5K1.1 of the Sentencing Guidelines . . . or any post-

sentence downward departure motion in this case pursuant to

Rule 35(b) of the Federal Rules of Criminal Procedure."  (Plea

-13-

Agreement ¶ 7.)  The plea agreement "sets forth the entire understanding between the parties," and "supercedes all prior understandings, promises, agreements, or conditions, if any, between [the government] and [Pollard][,]" and specifies that "[t]here are no other agreements, promises, understandings or undertakings between [Pollard] and [the Government]."  (Id. ¶¶ 12, 14.)  At the plea hearing, Pollard acknowledged that "the plea agreement represent[ed] the entire understanding that [she] had with the government" and that she had not received any other assurances.  (Plea Tr. at 32.)  The plea agreement did not provide Pollard any right to receive or be considered for a Rule 35 motion, and superceded any other understanding or agreement that Pollard may have had with the government.  United States v. Weaver, 112 F. Supp. 2d 1, 10 (D.D.C. 2000) (noting that where the plea agreement expressly left "the decision of whether or not to file . . . a [Rule 35(b)] motion entirely within the government's discretion[,]" the defendant had no entitlement to such a motion).

Even if the government had agreed to consider Pollard for a Rule 35 motion, the determination of whether Pollard provided substantial assistance is within the government's discretion under Rule 35.  In re Sealed Case No. 97-3112, 181 F.3d at 134 (stating that the "process of evaluating the extent and significance of a defendant's 'assistance in the investigation or

-14-

prosecution of another person'" is the prosecutor's decision).

Pollard presents no evidence on how she provided any assistance

to the government, let alone substantial assistance.  Tellingly,

what Pollard does not reveal is that she appears to have

inculpated the murder suspect in an interview with the police,

and then denied it under oath before the grand jury (PSR ¶ 13),

and testified on behalf of the suspect at his trial.  (Gov't

Opp'n at 14 n.4.)  The government's failure to deem such behavior

as qualifying substantial assistance hardly approaches

prosecutorial misconduct.

Similarly, when a defendant challenges a government refusal

to file a downward departure motion under 18 U.S.C. § 3553(e) or

USSG § 5K1.1, a court "can grant relief only upon a showing of

unconstitutional motive or a failure to meet the fundamental

requirement that the [g]overnment's actions bear a rational

relationship to some legitimate government objective" when the

plea agreement does not afford the benefit of a departure motion.

In re Sealed Case, 244 F.3d 961 (D.C. Cir. 2001); United States

v. White, 71 F.3d 920, 924-25 (D.C. Cir. 1995) (stating that Wade

v. United States, 504 U.S. 181, 185 (1992), which held that

despite the defendant's assistance, the government's refusal to

move for a departure was within its discretion unless based on an

improper motive, "simply does not endorse, in the absence of a

plea agreement that includes a substantial assistance provision,

-15-

a 'fairness' or 'bad faith' review other than within the
constitutional context"); see also United States v. Williams, 838
F. Supp. 1, 6 (D.D.C. 1993) (applying Wade to a claim that the
government neglected to file a motion under Rule 35(b)).  An
unconstitutional motive for not filing a departure motion would
have to be tantamount to a refusal due to race or religion.
Wade, 504 U.S. at 185-86.  Pollard does not indicate how the
government's failure to move to reduce her sentence stemmed from
an unconstitutional motive or failed to bear a rational
relationship to some legitimate government objective.  See
Williams, 838 F. Supp. at 7 (denying the defendant's § 2255
motion because the "defendant has not alleged, nor does the
record support, a constitutionally suspect reason or irrational
basis for the government's failure to file a motion to reduce her
sentence under Rule 35(b)").

CONCLUSION

Because Pollard failed to substantiate her claims regarding
ineffective assistance of counsel and prosecutorial misconduct,
her motion to vacate her sentence will be denied.

An appropriate Order accompanies this Memorandum Opinion.
SIGNED this 13th day of March, 2009.

_____
RICHARD W. ROBERTS
United States District Judge